**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN  DIVISION**

| | |
|---|---|
| BENJAMIN STEFFEN,<br>on behalf of Plaintiff and the class members<br>described below,<br><br>       Plaintiff,<br><br>    vs.<br><br>CRANE LENDING, LLC d/b/a<br>CRANE FINANCE;<br>CRYSTAL CHAPMAN-CHEVALIER;<br>WOLF RIVER DEVELOPMENT COMPANY;<br>and JOHN DOES 1-20,<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 1:24-cv-00185<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT  – CLASS ACTION

1.      Plaintiff Benjamin Steffen brings this action to secure redress from predatory and unlawful loans (such as <u>Exhibit A</u>). The loans are made in the name of Defendant Crane Lending, LLC d/b/a Crane Finance. Other parties involved in making the loans are Crystal Chapman-Chevalier, Wolf River Development Company, and John Does 1-20.

2.      Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count III  – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964 (Count IV).

## JURISDICTION AND VENUE

3.      The Court has subject matter jurisdiction under 28 U.S.C. § 1331, 18 U.S.C. § 1964, 28 U.S.C. § 1337, and 28 U.S.C. § 1367. Jurisdiction may also exist under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

1

4. This Court has personal jurisdiction over Defendants because they:

a. Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016)*, aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b. Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

5. Venue is proper because acts to obtain and collect the loans impacted Plaintiff in this District.

6. Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

2

## PARTIES

### Plaintiff

7.     Plaintiff Benjamin Steffen is a resident of Cook County, Illinois.

### Defendants

8.     Defendant Crane Lending, LLC d/b/a Crane Finance is an online lender that offers loans to consumers at annual percentage rates of more than 690%. (Exhibit A) It purports to be an entity formed under the laws of, and claims to be owned and controlled by, the Menominee Tribe of Wisconsin, a federally-recognized Indian Tribe. (Exhibit A, first page) It uses the address P. O. Box 477, Keshena, WI 54135.

9.     Crane Lending, LLC d/b/a Crane Finance operates through the website www.cranefinance.com.  (Exhibit B) The domain registry for www.cranefinance.com is a nominee. (Exhibit C)

10.     Defendant Crystal Chapman-Chevalier has been the Chief Executive Officer of Wolf River Development Company since June 2022. (Exhibit D) Her duties included direction and lending policy for Crane Lending, LLC d/b/a Crane Finance.

11.     Defendant Wolf River Development Company is an entity located at W2908 Tribal Office Loop Road, Keshena, WI 54135.

12.     The activities of the Wolf River Development Company include high-interest loans. (Exhibits E-G)

13.     Crane Lending, LLC d/b/a Crane Finance is one of multiple high-interest lending entities supposedly owned by the Menominee Indian Tribe. Others include Moose Lending, LLC, Elk Lending, LLC, Fox Lending, LLC d/b/a Loop Fund, West Side Lending LLC, and East Line Lending LLC.

14.     All of these entities are operated by Wolf River Development Company through two subsidiaries, Four Directions Lending LLC and Five Clans Lending LLC. (Exhibit E)

15.     On information and belief, the economic benefit of the activities of Crane Lending,

LLC d/b/a Crane Finance is received by non-Native American persons, as described below.

16.     Crane Lending, LLC d/b/a Crane Finance does business in Illinois over the Internet, via text message, via Automated Clearing House transactions, and over the telephone.

17.     Defendants John Does 1-20 are other natural and artificial persons involved in the lending activities described herein.

## FACTS RELATING TO PLAINTIFF

18.     On or about February 17, 2023, Plaintiff took out an installment loan from Crane Lending, LLC d/b/a Crane Finance. (Exhibit A) The loan had an amount financed of $500 and a disclosed annual percentage rate of 697.09%.

19.     Plaintiff made some payments, with interest at the stated rate. Defendants claim that amounts are outstanding.

20.     The loan was obtained for personal, family or household purposes and not for business purposes.

## FACTS – GENERAL

21.     Exhibit A is written on a standard form loan agreement used by Crane Lending, LLC d/b/a Crane Finance on a regular basis.

22.     Defendants regularly made loans to individuals in Illinois at such rates.

23.     The Crane Lending, LLC d/b/a Crane Finance website lists states in which Defendants will not make loans. (Exhibit B) It currently states, "Crane Finance does not lend to residents of Alaska, Arkansas, Connecticut, Delaware, District of Columbia (D.C.), Idaho, Illinois, Louisiana, Maine, Maryland, Massachusetts, Minnesota, Missouri, New Hampshire, New Jersey, New Mexico, New York, North Carolina, Pennsylvania, South Carolina, Texas, Utah, Vermont, Virginia, West Virginia, or Wisconsin." Illinois was recently added to the list.

24.     Defendants seek out loans from residents of states other than those listed in the preceding paragraph.

25.     On information and belief, the list of states is primarily dependent on the likelihood

4

of public or private enforcement in those states.

26.     On information and belief, the actual lending operations were carried out and continue to be carried out in locations other than tribal lands. The operations that are not conducted on tribal land include lead generation, marketing, funding, underwriting, payment processing, and collection.

27.     The funds lent are transferred by ACH credit to the borrowers' bank accounts throughout the United States.

28.     Repayment of the loans is made by ACH debit from the borrowers' bank accounts throughout the United States.

29.     Defendants' lending does not actually occur on the Tribe's reservation.

30.     A significant majority of the transaction occurs within the State of Illinois – applying for the loan and receiving and collecting the funds.

31.     The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel,* 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

32.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

33.     Under 815 ILCS 123/15-10-5(b), "[a]ny violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and

Deceptive Business Practices Act."

34.     Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

35.     Any loan made by an unlicensed person to an Illinois resident at more than 9% interest is void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

36.     Any loans to Illinois residents at more than 9% that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

37.     Illinois' criminal usury statute provides that the making of a loan by an unlicensed person at more than 20% interest is a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

38.     Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or

6

other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 237 F. Supp. 3d 130, 150 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

39. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569; *In the Matter of Money Mutual, LLC,* No. 12 CC 408; *In the Matter of Hammock Credit Services,* No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend,* No. 17 CC 133.

## RENT-A-TRIBE SCHEMES

40. In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

41. Here, and in such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

42. The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation – funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections – are performed by individuals and entities that are unaffiliated with the tribe.

43. In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

44. However, an entity must function as a legitimate "arm of the tribe" in order to fall

7

under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

45.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

46.     These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by non-tribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

47.     Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

48.     Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

49.     Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United*

*States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

## COUNT I - DECLARATORY AND INJUNCTIVE
## RELIEF AGAINST ILLEGAL CONDUCT

50.    Plaintiff incorporates paragraphs 1-49.

51.    This claim is against all Defendants.

52.    There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiff and the class members must repay the loans made to them.

53.    Declaratory relief will resolve such controversy.

54.    An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

55.    Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

56.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Crane Lending, LLC d/b/a Crane Finance at more than 9% interest (c) which loan has not been paid in full.

57.    Plaintiff may alter the class definition to conform to developments in the case and discovery.

58.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

59.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect

9

illegal loans.

60.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

61.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

62.     Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

63.     The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

        i.      Injunctive relief;

        ii.     Declaratory relief;

        iii.    Restitution of all amounts collected on the loans from members of the class;

        iv.     Costs of suit; and

        v.      Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

64.     Plaintiff incorporates paragraphs 1-49.

65.     This claim is against all Defendants.

66.     Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

67.     Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

10

68. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

69. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Crane Lending, LLC d/b/a Crane Finance at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

70. Plaintiff may alter the class definition to conform to developments in the case and discovery.

71. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

72. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

73. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

74. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

75. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Damages as provided in 815 ILCS 205/6.

    ii. Attorney's fees, litigation expenses and costs of suit; and

    iii. Such other and further relief as the Court deems proper.

11

## COUNT III – PREDATORY LOAN PREVENTION ACT
## AND ILLINOIS CONSUMER FRAUD ACT

76.     Plaintiff incorporates paragraphs 1-49.

77.     This claim is against all Defendants.

78.     Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

79.     Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*

## CLASS ALLEGATIONS

80.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

81.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Crane Lending, LLC d/b/a Crane Finance at more than 36% interest (all of its loans qualify) (c) on or after March 23, 2021.

82.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

83.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

84.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

85.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

86.     Plaintiff's claim is typical of the claims of the class members. All are based on the

12

same factual and legal theories.

87.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.     Individual actions are not economically feasible.

      b.     Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.     Compensatory damages;

      ii.     Punitive damages;

      iii.     Attorney's fees, litigation expenses and costs of suit; and

      iv.     Such other and further relief as the Court deems proper.

## COUNT IV – RICO

88.     Plaintiff incorporates paragraphs 1-49.

89.     This claim is against Defendants Crystal Chapman-Chevalier, Wolf River Development Company and John Does 1-20, who are the RICO "persons."

90.     All loans made in the name of Crane Lending, LLC d/b/a Crane Finance to Illinois residents  are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

91.     The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

92.     Crane Lending, LLC d/b/a Crane Finance is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

93.     Defendants Crystal Chapman-Chevalier, Wolf River Development Compan  and John Does 1-20 are associated with this enterprise. Crystal Chapman-Chevalier is its principal executive officer.  Wolf River Development Company directs and controls it.

94.     Defendants Crystal Chapman-Chevalier, Wolf River Development Company and John Does 1-20 conducted or participated in the conduct of the affairs of Crane Lending, LLC d/b/a Crane Finance through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

95.     Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

96.     Plaintiff brings this claim on behalf of a class.

97.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Crane Lending, LLC d/b/a Crane Finance at more than 18% interest (all of its loans qualify) (c) which loan was made on or after a date four years prior to the filing of suit.

98.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

99.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

100.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a.     Whether the loans at issue are "unlawful debts" as defined in RICO.

    b.     Whether Crane Lending, LLC d/b/a Crane Finance is an "enterprise."

    c.     Whether Defendants Crystal Chapman-Chevalier, Wolf River Development Company and Does 1-20 are each associated with Crane Lending, LLC d/b/a Crane Finance.

    d.     Whether Defendants Crystal Chapman-Chevalier, Wolf River Development Company and Does 1-20, each conducted or participated in the affairs of Crane Lending, LLC d/b/a Crane Finance through a pattern of making and

14

collecting unlawful loans.

101.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

102.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

103.    A class action is superior for the fair and efficient adjudication of this matter, in that:

     a.    Individual actions are not economically feasible.

     b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

     i.    Treble damages;

     ii.    Attorney's fees, litigation expenses and costs of suit; and

     iii.    Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Matthew J. Goldstein
**EDELMAN, COMBS, LATTURNER**
    **& GOODWIN, LLC**
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.


/s/ Daniel A. Edelman
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman


Daniel A. Edelman
**EDELMAN, COMBS, LATTURNER**
    **& GOODWIN, LLC**
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

17

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman